**In re Robert J. PETTEY, Debtor.**

**No. 02–14043–CJK.**

United States Bankruptcy Court, D. Massachusetts.

Jan. 21, 2003.

---

Gary Cruickshank, Boston, MA, for Debtor.

Mark Itzkowitz, Boston, MA, for Belanger Creditors.

Doreen B. Solomon, Milton, MA, Chapter 13 Trustee.

Eric K. Bradford, Boston, MA, for United States Trustee.

Christopher Marshall, United States Trustee.

## MEMORANDUM OF DECISION ON MOTIONS TO DISMISS AND ON ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE ENTERED AGAINST DEBTOR ROBERT J. PETTEY AND ATTORNEY JOSEPH CZERWONKA

CAROL J. KENNER, Bankruptcy Judge.

The Debtor's conduct in this case constitutes an egregious abuse of the Bankruptcy Code. Either intentionally or with reckless indifference to the rights of his creditors in bankruptcy, the Debtor omitted information from his bankruptcy schedules, statement of financial affairs, and creditor matrix and thereby excluded certain judgment creditors—two nieces to whom he owes a principal balance of $500,000 for child sexual abuse—and his former spouse from the bankruptcy process, in derogation of their substantive and procedural rights in Chapter 13.

This case is before the Court on two motions to dismiss the case and on the Court's own order to show cause, issued October 18, 2002, as to why sanctions should not enter against Debtor Robert J. Pettey and his former attorney in this case, Joseph Czerwonka. The Debtor initially opposed dismissal of the case but now consents to dismissal with prejudice. After a hearing on the motion and the order to show cause at which Attorney Czerwonka testified in explanation of his conduct and the Debtor offered no defense,[1] the Court now enters the following findings and rulings and, on the basis thereof, will (1) dismiss this case with prejudice to refiling for a time and with prejudice to the later discharge in bankruptcy of his debts to Elinore Davey and to the Belanger creditors; (2) sanction the Debtor for violation of FED. R. BANKR. P. 9011(b) by ordering him to pay the fees incurred in this case by the Chapter 13 Trustee and by counsel to the Belanger creditors; (3) sanction Attorney Czerwonka for violation of FED. R. BANKR. P. 9011(b) by ordering him to pay $2,000 to the William Belanger, as he is Father and Next Friend of Christina Belanger and Melissa Belanger, and $1,000 to the Chapter 13 Trustee, and (4) otherwise discharge the order to show cause against Attorney Czerwonka without further consequence.

### Facts and Procedural History

The Debtor, Robert J. Pettey, filed a petition for relief under Chapter 13 of the Bankruptcy Code on June 3, 2002, thereby commencing this bankruptcy case. This was his second bankruptcy filing. In his first case (No. 92–18993–CJK), he received a Chapter 7 discharge, but the Court also determined that his obligation to William Belanger, as he is Father and Next Friend of Christina Belanger and Melissa Belanger ("the Belanger creditors"), in the principal amount of $750,000 was excepted from discharge by operation of 11 U.S.C. § 523(a)(6) as a debt for willful and malicious injury, and this determination was sustained by the District Court on appeal. *Pettey v. Belanger ex rel. Belanger,* 232 B.R. 543 (D.Mass.1999). The debt is based on an agreed judgment for sexual assault and battery against his minor nieces, the Belangers. (The Debtor also pled guilty to criminal charges for the underlying actions and was sentenced to

---

1. The Debtor elected under his Fifth Amendment privilege against self-incrimination to say nothing.

and served time in prison for his offenses.[2]) By the time of his second bankruptcy filing, the Belanger creditors had succeeded in liquidating the Debtor's non-controlling interests in two closely-held corporations for a total of $250,000 and applying this sum to their claim, leaving the Debtor obligated to them for at least $500,000.[3] At the time of the second case, the Debtor also remained obligated to his former wife, Elinore Davey, under a Probate Court order for support obligations in the amount of $40,000.

Shortly after he filed the petition commencing this case, the Debtor also filed his bankruptcy schedules, his statement of financial affairs, his numbered listing of creditors, and his mailing matrix, all signed by the Debtor under the pains and penalties of perjury. These documents were inaccurate and misleading in several respects. First, though the Debtor clearly knew of his obligation to Elinore Davey when he filed these documents (whether the obligation had by then been reduced to a contempt judgment or not), nowhere in them did he list her as a creditor or disclose the existence of her claim. Second, throughout these documents, he consistently listed the address of the Belanger creditors (c/o their attorney, Mark Itzkowitz) incorrectly, using an address from which Itzkowitz had long-since relocated. Third, in the Statement of Financial Affairs, the Debtor failed to disclose, in part 4 of the Statement, certain suits to which he was a party within one year immediately preceding the filing of his bankruptcy petition, including (i) No. 92–DO886–DV1 in Bristol County Probate and Family Court, in which he is a defendant; (ii) Civil Action No 91–02654 in Bristol County Superior Court, in which he is a defendant; (iii) Civil Action No. 95–01582C in Bristol County Superior Court, in which he is a defendant; and (iv) Civil Action No. 01–1934 in Norfolk County Superior Court, in which he is a defendant. Fourth, in part 17a of the Statement of Financial Affairs, the Debtor failed to disclose the name of Bruce Hague, an accountant who, within six years immediately preceding the filing of Debtor's bankruptcy case, kept or supervised the keeping of books of account and records of the Debtor. In addition, the Debtor signed and filed a Chapter 13 Plan and then an Amended Chapter 13 Plan in which, despite knowledge of his obligation to Elinore Davey, he failed to make provision for her claim, including by failing to include the amount of her claim in the total of unsecured claims on which the plans proposed to pay a dividend. (The Court confirmed the Amended Plan but later vacated the confirmation order upon learning that neither Ms. Davey nor the Belanger creditors had been given notice of the plans.)

For these failures by the Debtor and others by his attorney, Joseph Czerwonka, the Court, on October 18, 2002, issued an order to show cause why sanctions should not enter against them for violations of FED. R. BANKR. P. 9011(b). The order is detailed; without reiterating its content, I include it herein by reference and append a copy to this Memorandum. The Order expressly ordered the Debtor to show cause why the order dismissing this case should not expressly bar the dis-

---

**2.** The Belanger creditors allege that the sentence was reduced because the Debtor agreed to pay damages in the civil action against him, and that the Debtor filed this bankruptcy case (and his earlier case) precisely to hinder enforcement of the agreement with which he purchased lenience. These allegations have not been adjudicated.

**3.** The Belanger creditors also contend that, in addition to the principal, they are entitled to substantial interest on the debt. I need not address the issue.

charge, in a later case under the Bankruptcy Code, of the debts presently owing to the Belanger creditors and to Elinore Davey, the cause being that

1. he signed under penalty of perjury and filed in this case the schedules of creditors, the numbered listing of creditors, and the list of creditors (mailing matrix) while omitting from such documents the name and address of creditor Elinore M. Davey and her claim in the amount of $40,000; and

2. he signed under penalty of perjury and filed in this case the schedules of creditors, the numbered listing of creditors, and the list of creditors (mailing matrix) and incorrectly listed in each of these the address of Attorney Mark Itzkowitz, for creditor William Belanger, as he is Father and Next Friend of Christina Belanger and Melissa Belanger.

Because the amount of his unsecured debt to the Belanger creditors alone exceeded the Chapter 13 eligibility limit for noncontingent, liquidated, unsecured debts of $290,525, see 11 U.S.C. § 109(e), the Chapter 13 Trustee moved to dismiss the case. The Belanger creditors joined in the Chapter 13 Trustee's motion to dismiss and moved separately for dismissal on the basis of bad faith by the Debtor in his conduct of the case and in the filing of his Amended Chapter 13 plan.

The Court conducted an evidentiary hearing on the two motions to dismiss and the Order to Show Cause on December 11, 2002. The Debtor offered no opposition to the motions to dismiss and in fact consented to dismissal. In doing so, he expressly understood that dismissal of the case would forever bar the discharge in any later bankruptcy case of the Belanger and Davey obligations. He did not otherwise consent to the sanctions contemplated by the order to show cause, but he also offered no evidence or argument as to why the contemplated sanctions should not enter. The Chapter 13 Trustee, Doreen Solomon, and counsel for the Belanger Creditors both attempted to elicit testimony from the Debtor, but, in response to every question they posed, he invoked the Fifth Amendment privilege against self-incrimination. Only Mr. Czerwonka offered testimony—his own and that of his secretary— and his evidence concerned his own conduct, not the Debtor's.

### Dismissal

Section 109(e) of the Bankruptcy Codes states that "only an individual with regular income that owes, on the date of the petition, noncontingent, liquidated, unsecured debts of less than $290,525 . . . may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e). The Debtor does not dispute that the Belanger creditors have, to date, recovered only $250,000 on a judgment debt in the principal amount of $750,000. He does not dispute that the balance of the obligation is, except for $5,000 thereof, unsecured. And he does not dispute that the obligation is noncontingent and liquidated. Therefore, the Belanger debt alone far exceeds the eligibility limit.

Though he no longer advances this argument, the Debtor initially responded to the Trustee's motion to dismiss with the argument that the assets liquidated in satisfaction of the debt had a value far in excess of the $250,000 for which they were liquidated, and that he should be given credit for the full value of the assets, which would substantially reduce the balance due and bring his total noncontingent, liquidated, unsecured debts below the eligibility limit. The Debtor has not offered any evidence to substantiate his position as to the value

of the assets;[4] much less has he articulated a theory on which the relief he seeks (reduction of the amount deemed owing) could be granted. The Debtor bears the burden of proving that he is entitled to a greater credit than the amount that the Belanger creditors realized for the assets, but he has offered no proof on the issue. I conclude that Mr. Pettey is ineligible to be a debtor under Chapter 13 and therefore that his case must be dismissed.

### Dismissal as Barring Future Discharge

■ *"Unless the court, for cause, orders otherwise,* the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed." 11 U.S.C. § 349(a) (emphasis added). The emphasized language expressly recognizes that the court may, for cause, order that the dismissal of a bankruptcy case will bar the discharge in a later bankruptcy case of debts that were dischargeable in the case dismissed. The Court finds that such cause exists here with respect to the Debtor's obligations to the Belanger Creditors and to Elinore Davey.

■ With respect to the obligation to Elinore Davey, the cause is Debtor's abuse of the bankruptcy process with respect to her and her claim. Despite his knowledge of her claim, he did not list her on the matrix. The matrix functions as a mailing list by which the Court is able to notify creditors of the filing of a case in which they have an interest and of their rights in the case. His failure to include her on the list had the effect of denying her due process with respect to this case. Nor did he list her on the schedules of creditors. And he omitted from his statement of financial affairs any mention of the state court proceedings pending between them. The omission of Ms. Davey and her claim occurs in several places where the Debtor was obliged to disclose them. I cannot believe that such repeated omissions with respect to this one creditor, all still unexplained, can have been unintentional. At the very least, they demonstrate an attitude of reckless indifference to the accuracy of the schedules and to the rights of this creditor in bankruptcy. The quid pro quo for bankruptcy relief, especially a discharge, is full and accurate disclosure of one's financial affairs, especially where such disclosure affects the right of a creditor to participate in the case. The Debtor's cavalier disregard of that obligation with respect to this debt is cause to except it from discharge in future bankruptcy cases (if it is not already excepted from discharge[5]).

■ With respect to the Belanger creditors, the cause is more complex.[6] First,

4. On October 28, 2002, Mr. Pettey filed an affidavit in this case that set forth his own averments in support of this argument But, at the evidentiary hearing on the motions to dismiss, he did not cite the affidavit in opposition to the motion. Moreover, where, in reliance on the privilege against self-incrimination, the Debtor refused to answer questions by opposing counsel concerning the subject matter of the affidavit, the affidavit cannot, consistently with due process, be accepted as evidence, and accordingly I have not treated it as evidence.

5. On December 6, 2002, the Debtor filed a Notice of Amendment to Schedules and Statement of Financial Affairs that, among other things, amended Schedule E, the schedule of priority claims, by listing the debt to Elinore Davey in the approximate amount of $40,000 and stating that the debt is for child support. Debts for child support are excepted from discharge in every chapter under which a discharge might be obtained. See 11 U.S.C. §§ 523(a)(5), 727(b), 1141(d)(2), 1228(a)(2) and (c)(2), and 1328(a)(2) and (c)(2).

6. In his earlier Chapter 7 case, this Court determined, after a trial, that the Belanger debt was excepted from discharge under 11 U.S.C. § 523(a)(6). That determination would be preclusive in any subsequent case

the Debtor failed to list the Belanger creditors (on the matrix and in the schedules of creditors) at their attorney's correct address. The Debtor knew the correct address (and had recently been summoned for a deposition at that address) but offered no excuse or explanation for his use of the wrong address. His attorney, Mr. Czerwonka, testified that the wrong address was an oversight, caused by his (Czerwonka's) using schedules from the Debtor's 1996 case as a template from which to prepare the schedules in this case. But Mr. Czerwonka's oversight does not exculpate the Debtor because the Debtor had an independent obligation to verify the information in the schedules. He has offered no testimony that he attempted to do so. In view of the number of inaccuracies in the statement and schedules, the Debtor cannot have reviewed the information with any care.

This in itself is an abuse of bankruptcy process, but the abuse becomes more egregious when viewed in context. The Belanger obligation is by far the Debtor's largest, and the Debtor filed this Chapter 13 petition precisely to obtain a discharge of that debt: his chapter 13 plans proposed to pay two percent of that debt over five years, at the end of which time he would receive a discharge of the balance. But, in view of the size of his debt to the Belangers, the Debtor was not eligible for relief

under Chapter 13 (the only chapter under which he could possibly obtain a discharge of that debt), at least not without a judicial determination that the Belangers should be deemed to have received more than they actually received for the assets they liquidated in satisfaction of the debt. Nonetheless, the Debtor has commenced no proceeding in this case (or elsewhere) for a determination of any lesser balance due, and his Chapter 13 plans (the original and the amended) quantified the unsecured claim at the full principal balance (after deduction of the $5000 secured portion) of $495,000. And now, in response to the Trustee's motion to dismiss and the Court's order to show cause, Debtor has offered no evidence whatsoever and articulated no theory on which the relief he seeks (reduction of the amount deemed owing) could be granted. Moreover, although the Belanger debt is mostly unsecured (the Debtor himself listed the secured portion as only $5,000 of the $500,000 owing [7]), he did not list it on his schedule of nonpriority unsecured creditors,[8] thereby camouflaging an unsecured obligation that, on its face, would raise a red flag as to his eligibility for Chapter 13 relief.

This is not the first time that the Debtor has filed a Chapter 13 petition that he was ineligible to file. The Debtor commenced

under Chapter 7 or under Chapter 11. 11 U.S.C. § 523(a)(6), § 727(b), and § 1141(d)(2). Therefore, the Debtor's obligation is already incapable of being discharged in a subsequent case under Chapter 7 or 11. The debt could possibly be subject to discharge in a case under Chapter 13 (I make no ruling at this time on the Belangers' arguments to the contrary), but the Debtor would first have to reduce his total noncontingent, liquidated, unsecured debts to below the eligibility limit in order to qualify for any relief under Chapter 13, and that in turn would necessitate substantial pay down of the Belanger debt, which alone far exceeds the

eligibility limit. Consequently, the possible dischargeability of the Belanger debt in bankruptcy is already very limited.

7. The insignificance of the secured portion is highlighted by the fact that the Debtor made no provision for it in his proposed Chapter 13 plans.

8. He did list the debt on his schedule of secured debts, stating that $500,000 obligation was secured to the extent of $5,000, but he did not list the balance of the debt on the separate schedule of nonpriority unsecured debts.

his 1996 bankruptcy case in Chapter 13 but then converted to Chapter 11 only after the Chapter 13 Trustee and the Belangers had moved to dismiss the case on the basis of ineligibility for Chapter 13 relief. In that earlier case, too, he failed to list the Belanger debt among his unsecured debts.

Nor is this a case of an innocent debtor's being unfairly tarred for the tactics of his counsel. The Debtor bore independent responsibility for the accuracy of his schedules and matrix; at the very least, he controlled (by his responsibility for the accuracy of the matrix) whether the Belangers would get a fair opportunity to participate in this case and to contest what he must have known, in light of his previous case, was (to put it most charitably) a claim to eligibility for Chapter 13 relief that they might reasonably want to contest. In light of the established nondischargeability of the Belanger obligation in Chapters 7 and 11, the reasons for that nondischargeability, and the amount of his obligation to them, the Debtor was obligated, in seeking relief under Chapter 13, to do so with the most scrupulous good faith and fairness toward the Belangers. Instead, he has abused Chapter 13 and, in his dealings with the Belangers in this case, acted in bad faith and shown only contempt for them, their substantive rights, and their rights to notice and due process. This is cause to deny him the benefit of a discharge with respect to the Belanger obligation in any future case he may file under the Bankruptcy Code.

### Further Sanctions under Rule 9011 Against Debtor

■ The Court finds that, by his numerous omissions in the schedules, statement of financial affairs, matrix, and numbered listing of creditors (the omissions identified in numbered items 2, 3, 6, 7, and 8 of the order to show cause), the Debtor has repeatedly violated FED. R. BANKR. P. 9011(b)(3) in that he has made factual representations without factual support and without having made a reasonable effort to verify the accuracy of his representations. Further, by his failure to make provision for the claim of Elinore Davey in his Chapter 13 Plan and Amended Chapter 13 Plan, he has violated FED. R. BANKR. P. 9011(b)(3) by omitting the amount of her claim from the total of unsecured claims; and he has violated Rule 9011(b)(1) by filing a plan that, for failure to make provision for her claim, he knew should not be confirmed. In all these matters, he has shown a reckless disregard for the truth and for the rights of his creditors in bankruptcy.

■ For these violations, Rule 9011(b) permits the Court to impose an appropriate sanction on the Debtor. FED. R. BANKR. P. 9011(b). The sanction shall be limited "to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." FED. R. BANKR. P. 9011(b)(2). And it may include directives of a nonmonetary nature. *Id.*

In this instance, a monetary sanction (such as an award of fees) might have no deterrent effect, as further monetary obligations would only compete with existing obligations that are long overdue. The Court instead will bar the Debtor from a further bankruptcy filing under any Chapter of the Bankruptcy Code for a period of three years from the date of this order. This sanction reflects the nature of the offense it addresses and is more likely than any monetary alternative to deter.

### Sanctions under Rule 9011 Against Attorney Joseph Czerwonka

■ The Court's order to show cause listed six possible causes for sanctions against Attorney Czerwonka. Three arise from his failure to disclose or deal with the

claim of Elinore Davey. Mr. Czerwonka testified that, at the time that he filed the documents in question, he had no knowledge of the existence of a debt to Ms. Davey. In view of this testimony and of the lack of contradictory evidence in the record, the Court will not enter sanctions on for items 3, 4, and 5 of the order to show cause.

Item 10 concerned Attorney Czerwonka's signing and filing his certificate of service with respect to the Amended Chapter 13 Plan and the Motion to Approve the Amended Plan. The certificate indicated that he had by mail served the Plan and Motion on the Chapter 13 Trustee and on Attorney Mark Itzkowitz on August 8, 2002, but postmarks on the mailings to the Trustee and Attorney Itzkowitz bear a date after September 10, 2002, such that it appears that Mr. Czerwonka did not mail the documents to the Trustee and Mr. Itzkowitz until approximately one month after he filed the certificate of service. At the hearing, Attorney Czerwonka and his secretary, Colleen Oliver, testified that the envelopes in question were deposited in a mailbox on the date set forth in the certificate of service, and that they could not explain the later postmark. In view of their testimony and of the fact that the postmark on both envelopes is an unusual one, I will give Mr. Czerwonka the benefit of the doubt as to this item.

Item 9 concerned Attorney Czerwonka's incorrectly listing the address of Attorney Mark Itzkowitz, as counsel to the Belanger creditors, on the mailing matrix that Czerwonka filed in the case. Czerwonka testified that this was an oversight, caused by his use of the schedules that his office had prepared for the Debtor's 1996 case as a template for preparing the schedules for the present case. He testified that, although he knew that Itzkowitz had moved to a new address, he had simply failed to

notice that the address in the old schedules did not reflect the new address. Mr. Czerwonka thus attributes the matter to simple negligence, and, again, I will give Mr. Czerwonka the benefit of the doubt.

■ Item 1 concerned Mr. Czerwonka's having filed a petition under Chapter 13 despite the Debtor's apparent ineligibility under 11 U.S.C. § 109(e) to be a debtor under Chapter 13 because his noncontingent, unliquidated, unsecured debts exceed the limit of $290,525. The Court ordered Mr. Czerwonka to show cause why this was not a violation of Rule 9011(b)(1), (2), and (3). Czerwonka testified at the hearing that, when he filed the petition, he was aware that the Debtor's unsecured debt exceeded the eligibility limit, largely because the principal balance owing to the Belangers was $500,000. Czerwonka added that, because the Belangers had liquidated the Debtor's assets for less than their fair market value, the Debtor was entitled to a credit not for the amount received ($250,000) but for their much-higher fair market value, which would reduce Debtor's total noncontingent, unliquidated, unsecured debts to below the eligibility limit. This is precisely the same argument that Czerwonka advanced in the response he filed (on August 23, 2002) to the Chapter 13 Trustee's motion to dismiss the case for ineligibility. Neither in the case nor in response to the order to show cause has Czerwonka offered any authority for the proposition that a debtor should be given credit for the fair market value of the assets liquidated; nor has he offered evidence that the amount actually received was anything other than fair market value. In short, he has offered nothing to support his position. Moreover, he did not argue that the sales process was flawed or subject to fraud or collusion. He merely argued that, if the sale price had been higher, the Belangers would have received

more money, and the debt owed by his clients would be lower.

The Court knows of no authority for the proposition that, when a judgment creditor liquidates the judgment debtor's property in satisfaction of the judgment debt, the debtor must be given credit for the fair market value of the property if such value is higher than the price obtained. Courts scrutinizing foreclosure sales will ask whether the sale *process* was conducted fairly, in good faith, or in conformity to applicable statutory requirements or standards, but inadequacy of the sale price alone is not cause, either in the Bankruptcy Code or in Massachusetts law, to invalidate a foreclosure sale or to justify a higher credit than the price actually received.[9] Czerwonka's argument is based entirely on the disparity between the price received and the supposed fair market value of the property, not on the *manner* in which the sale was conducted.

Czerwonka did not indicate whether he had researched this issue before he filed the Debtor's Chapter 13 petition. Nor did he offer an explanation or justification for his believing (if he so believed) that his argument satisfied Rule 9011(b)(2)'s requirement of being "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." FED. R. BANKR. P. 9011(b)(2). Moreover, although Czerwonka was aware that,

absent a determination that a larger credit was due, the Belanger debt alone would render the Debtor ineligible for Chapter 13 relief, he did not initiate a proceeding for a determination that the Debtor was entitled to a greater credit. Also, when the Trustee and later the Court and the Belangers raised the issue of the Debtor's eligibility for Chapter 13 relief, the Debtor ultimately chose not to litigate the issue; he consented to dismissal instead. All of this indicates that, in filing the Debtor's Chapter 13 petition, Czerwonka was *not* aware of a nonfrivolous basis for the Debtor's eligibility, and that no such basis existed. I conclude that Czerwonka's argument for eligibility did not satisfy the standard in Rule 9011(b)(2) and therefore that he signed and filed the petition in violation of that standard.

As a sanction, this Court will order Czerwonka to pay $2,000 to William Belanger, as he is Father and Next Friend of Christina Belanger and Melissa Belanger, for the attorney's fees incurred by their counsel in contending with this case, and $1,000 to the Chapter 13 Trustee for the cost to her and her office of contending with this case.

### Conclusion

For the reasons set forth above, the Court will (1) allow the motions of the Chapter 13 Trustee and the Belanger creditors to dismiss, (2) dismiss the pres-

---

9. See, for example, *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (the price obtained at a properly-conducted foreclosure sale of real property under state law is "reasonably equivalent value" for purposes of the fraudulent conveyance analysis in 11 U.S.C. § 548, as long as the requirements of state foreclosure law have been met); *National Loan Investors v. LaPointe*, 253 B.R. 496, 499–500 (1st Cir. BAP 2000) (duty of a mortgagee foreclosing on real estate in Massachusetts is governed primarily by adherence to the statutory publication and notice requirements; mortgagee must also act in good faith and use reasonable diligence in conducting the sale); G.L. c. 106, § 9–610(b) ("Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable;" Official Comment 10 states: "While not itself sufficient to establish a violation of this Part, a low price suggests that a court should scrutinize carefully all aspects of a disposition to ensure that each aspect was commercially reasonable.").

ent Chapter 13 case with prejudice to the later discharge in bankruptcy of the Debtor's existing obligations to the Belanger creditors and to Elinore Davey, (3) as a sanction for the Debtor's violation of FED. R. BANKR. P. 9011(b), provide that such dismissal will be with prejudice to the Debtor's filing another petition under the Bankruptcy Code for a period of three years from the date of this order, (4) as a sanction for Attorney Czerwonka's violation of FED. R. BANKR. P. 9011(b), order Attorney Czerwonka to pay $2,000 to the William Belanger, as he is Father and Next Friend of Christina Belanger and Melissa Belanger, and $1,000 to the Chapter 13 Trustee, and (5) otherwise discharge the order to show cause against Attorney Czerwonka without further consequence.